625 So.2d 17 (1993)
CITY OF COCOA, Florida, Appellant,
v.
HOLLAND PROPERTIES, INC., et al., Appellees.
No. 92-1274.
District Court of Appeal of Florida, Fifth District.
September 3, 1993.
Rehearing Denied October 11, 1993.
*18 Bradly Roger Bettin of Amari, Theriac, Eisenmenger and Woodman, P.A., Cocoa, and David M. Caldevilla, Tampa, for appellant.
Paul A. Turk, Jr. and Robert W. Morrison of Wells, Morrison, Davis & Bergstrom, P.A., Orlando, for appellee Holland Properties, Inc.
Kathryn L. Mennella, Palatka, amicus curiae, for St. Johns River Water Management Dist.
PETERSON, Judge.
The City of Cocoa (Cocoa) appeals the denial of an order of taking as to Holland Properties, Inc.'s (Holland) fee simple interest in lands in Orange County. The trial court denied the taking when it found that the evidence presented at trial failed to show a reasonable necessity for the land upon which Cocoa planned to construct three water wells. We reverse.
On December 13, 1990 Cocoa was granted a consumptive use permit for water withdrawal by the St. Johns River Water Management District (St. Johns). The permit was issued after the district rejected exceptions to the hearing officer's findings of fact and law raised by the petitioners and others. The final order issuing the permit was affirmed by this court in Corporation of the President of the Church of Jesus Christ of Latter Day Saints v. St. Johns River Water Mgt. Dist., 590 So.2d 427 (Fla. 5th DCA 1991).
The trial court granted Cocoa's motion for summary judgment on several issues which Cocoa argued had previously been litigated in the administrative hearings, but denied the motion as to issues which related to conditions or new facts which arose from the time of the May 1990 administrative hearings. The trial court denied the taking after a trial of the remaining issues and ruled that Cocoa failed to demonstrate that a reasonable necessity existed for the taking.
The issues presented are:

*19 (1) Whether the correct legal standard was applied in establishing the quantum of proof required to show a reasonable necessity for a taking; and
(2) Whether in applying the standard, the trial court properly concluded that no reasonable necessity was shown for the taking.

Legal Standard to Establish a Reasonable Necessity in Eminent Domain Cases
Holland initially objects to consideration of this issue on appeal arguing that Cocoa waived its right to place in issue the quantum of proof required to establish the necessity for a taking. The waiver occurred says Holland when Cocoa at numerous points during the trial argued that the greater weight of the evidence demonstrated a reasonable necessity. Cocoa responds that the trial court established that the greater weight standard would apply to the trial when it denied all requested relief at the summary judgment hearing and ruled it would consider evidence concerning conditions or new facts that arose from the time of the issuance of the consumptive use permit by St. Johns. Cocoa argues that it had to play by the trial court's rules in order to participate in the trial but drew the trial court's attention to the proper standard in closing argument. This was accomplished by submitting supplemental authority after the evidence was presented at the taking hearing and by submitting a revised proposed order of taking that found that Cocoa was obligated only to establish a prima facie case of necessity and once established, it was Holland's burden to show bad faith or gross abuse of discretion. We agree with Cocoa that the correct standard was presented to the trial court before its decision was made or became final.
The quantum of proof required by a condemning authority to establish a necessity for a taking was summarized in Broward County v. Steele, 537 So.2d 650 (Fla. 4th DCA 1989):
A condemning authority need only offer some evidence showing reasonable necessity for taking. Thereafter a condemning authority's discretion should not be disturbed absent a showing of bad faith or an abuse of discretion... . Once reasonable necessity is shown, the landowner must show fraud, bad faith or gross abuse of discretion in order to defeat it. (citations omitted).
Id. at 651-652. In Steele, the court recognized the procedure enunciated by the supreme court in Canal Authority v. Miller, 243 So.2d 131 (Fla. 1970). There the court placed the initial burden squarely on the condemning authority by requiring that "proof of necessity is a condition precedent to the valid exercise of the power. It is not an affirmative defense to allege a lack of necessity." Id. at 134. The court then proceeded to explain that necessity means a "reasonable necessity for the condemnation" and the question of necessity involves two separate and distinct phases. Initially, the condemning authority must show the reasonable necessity and then the landowner must then either concede the existence of a necessity or be prepared to show bad faith or abuse of discretion as an affirmative defense. Id.

Evidence of Necessity Presented
The initial and total burden was upon Cocoa to show a reasonable necessity for the taking. Broward County v. Ellington, 622 So.2d 1029 (Fla. 4th DCA 1993) ("A condemning authority satisfies its initial burden of proof concerning a reasonable necessity for condemnation by presenting evidence that it considered relevant factors, such as alternative sites, costs, long-range area planning, environmental and safety considerations in making its decision.") Holland had only to move for denial of the order of taking at the conclusion of Cocoa's presentation in order to test that necessity. Denial of the motion would have then placed the burden on Holland to proceed with an affirmative defense of bad faith or abuse of discretion. That procedure seems simple enough. The instant case, however, was complicated by the fact that the original data showing a necessity for the permit may have been outdated by events occurring during the eighteen months that was required to resolve appeals by Holland and others. The hearing conducted by the trial court was to determine *20 whether new factors occurred subsequent to the issuance of the consumptive use permit that would eliminate the necessity for the taking. It is necessary to review the factors that were the basis for the trial court's denial of the taking.
The initial showing of necessity was grounded on the consumptive use permit issued by St. Johns. Without that permit, Cocoa would not have had any basis for the condemnation of the lands to establish the well sites. Water districts are the sole agencies empowered to grant consumptive use permits in Florida. As the supreme court wrote over ten years ago:
The Florida Water Resources Act, in recognizing a need for conservation and control of the waters in the state (Section 373.016, Fla. Stat. (1973)) makes all waters in the state subject to regulation, unless otherwise specifically exempt... . The Department of Environmental Regulation and the various water management districts are given the responsibility to accomplish the conservation, protection, management, and control of the waters of the state. § 373.016(3), Fla. Stat. (1973). In order to exercise such controls a permitting system is established which requires permits for consumptive use of water, exempting only "domestic consumption of water by individual users" from the requirements of a permit. § 373.219(1), Fla. Stat. (1973)... .
Village of Tequesta v. Jupiter Inlet Corp., 371 So.2d 663, 671 (Fla. 1979), cert. denied, 444 U.S. 965, 100 S.Ct. 453, 62 L.Ed.2d 377 (U.S.Fla. 1979). The trial court was presented, however, with the possibility of events that could have occurred since the consumptive use permit was issued that eliminated the need for Holland's lands as well sites. These events could have demonstrated that there was no reasonable necessity for the taking or they could have been evidence of an abuse of discretion or bad faith in maintaining the eminent domain proceeding. The trial court's order sets forth the post-permit events underlying its decision to deny the requested order of taking. Our review of the hearing officer's findings of facts, which the trial court accepted, indicates that each of the post-permit events was squarely considered by the officer.[1]
The issue of the necessity for the taking must be resolved in Cocoa's favor based upon the issuance of the district's consumptive use permit, and based upon a review of the hearing officer's findings of facts that contemplated *21 each of the post-permit factors used by the trial court to support the denial of the taking.
We vacate the order denying the taking for failure to show a reasonable necessity and remand to the trial court for further consideration of Holland's claim alleging that Cocoa abused its discretion or acted in bad faith in attempting to condemn Holland's lands.
ORDER VACATED; REMANDED.
GOSHORN and THOMPSON, JJ., concur.
NOTES
[1] (a) The trial court's order determined that "since the time of the administrative hearing ... demand projections made by Cocoa as to its future water supply needs have been substantially higher than actual use for the years 1990 and 1991" and that "based upon the evidence presented ... it is reasonable to assume that the actual water use will continue to be lower" than projections through the expiration of the current consumptive use permit in 1997. The hearing officer's findings of facts numbers 42 through 46 envisioned the possibility of projected demands being overstated. Finding number 44 states: "It is generally preferable to over-project demand, rather than under-project and have insufficient water available for the service area's needs." Moreover, in finding number 45 the hearing officer noted a condition of the permit "reserves to the District the right to modify annual allocations if the permitee does not reach its new projected demand." The district's solution appears reasonably to be that, if the demand is not there, the District reduces the allocation or the authority for withdrawal rather than closes a well site.

(b) The trial court's order provides that Cocoa acquired substantial water resources eliminating the need for Holland's property. Wells 20, 21 and 22 were obtained in 1991 and 18 additional wells had been obtained from Deseret Ranches. The hearing officer's report shows that the planned acquisition of the eighteen wells are specifically described by well number in findings of fact number 13, and wells 20, 21 and 22 are described in number 14.
(c) The trial court's order provides that aquifer storage recovery system (ASR) wells will assist in meeting the water demands and that concerns raised by the hearing officer regarding the viability of ASR's have been eliminated. The hearing officer recognized in finding of fact number 54 that ASR wells were part of the proposed water system and that ASR wells do not produce new water, but provide additional storage capacity, much like above-ground tanks. The officer stated that, "ASR wells cannot be considered a reliable substitute for additional production wells at this time."
(d) The trial court's order provides that Cocoa planned to have the Taylor Creek plant on line for use by or before 1997. The hearing officer's finding of fact number 51 states that "[d]evelopment of the Taylor Creek Reservoir as a surface water source will take approximately five to eight years  too long to meet the City's needs now and in the interim."